

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

ALFREDO GUILLERMO SANCHEZ, DAVID
CHRISTOPHER "CHRIS" BALL, and
SEAN MARX,

       Plaintiffs,

v.

BRIDGET HILL, Wyoming Attorney General in her
official capacity; MARK GORDON, Governor of
Wyoming in his official capacity; MATT CARR,
Sheriff of Teton County, Wyoming, in his individual
and official capacities; SARA KING, Director of
Teton County 24/7 Sobriety Program, in her
individual and official capacities; BILL WEST,
Acting Director of Teton County 24/7 Sobriety
Program in his individual and official capacities;
DOUG RAFFELSON, CODY HADERLIE, MATT
HARPER, and HEIDEE McKENZIE, Teton County
Deputy Sheriffs in their individual and official
capacities; TETON COUNTY SHERIFF'S
DEPARTMENT; and BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF TETON;

       Defendants.

Case No. 22-CV-47-SWS

---

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction

and supporting memorandum (Docs. 2, 3). Defendants filed oppositions thereto (Docs. 18,

20), Plaintiffs filed an amended complaint partially in response to Defendants' oppositions

(Doc. 22), and Defendants supplemented with leave of the Court (Doc. 33). Plaintiffs also

filed written replies without leave of the Court in violation of Local Civil Rule 7.1(b)(2)(C)

(Docs. 23, 24).  The Court has considered the declarations of Lauren McLane and Sean Marx attached to those replies, but not the replies themselves.  A hearing was held on the motion on April 8, 2021.  Plaintiffs seek to preliminarily enjoin the enforcement of Wyoming's 24/7 Sobriety Program during the pendency of this lawsuit.  The Court denies the request for preliminary injunction because Plaintiffs have failed to carry their burden of showing a substantial likelihood of success on the merits.

## BACKGROUND

1.    **Wyoming's 24/7 Sobriety Program**

Wyoming's "24/7 Sobriety Program Act" is found at Wyo. Stat. §§ 7-13-1701 through -1710.  The Act's stated purpose "is to reduce the number of repeat crimes that are related to substance abuse by monitoring an offender's sobriety through intensive alcohol and drug testing and immediate and appropriate enforcement of violations."  Wyo. Stat. § 7-13-1703(a).  It seeks to do so through the creation of the "24/7 Sobriety Program," which provides "for frequent and certain testing for drug or alcohol use" of certain criminal defendants.  *Id.* § 7-13-1703(b).  Through the county sheriff, each Wyoming county may elect to adopt and implement the program.  *Id.* § 7-13-1704(a).  If adopted, the "sheriff shall establish the testing locations and times for his county but shall have at least one (1) testing location and two (2) daily testing times approximately twelve (12) hours apart …."  *Id.* § 7-13-1704(b).  For those counties that have adopted the program, the Act provides in relevant part, "Upon a charge or offense for conduct committed while intoxicated or under the influence of a controlled substance, a [Wyoming trial] court may order participation in the program as a condition of pretrial release, bond, suspension of sentence, probation or

other conditional release." *Id.* § 7-13-1708(a).  And specific to this case, "Participation in the program may be imposed as a condition of release under the Wyoming Rules of Criminal Procedure, including rules 46.1 and 46.2." *Id.* § 7-13-1708(b).

Under Wyo. Stat. § 7-13-1705, the Wyoming attorney general adopted administrative rules to implement the program, including providing "for the nature and manner of testing and the procedures and apparatuses to be used for testing."  The administrative rules require each program participant to execute a written "participation agreement," which contains: (1) the type, frequency, and time period of testing; (2) the testing site location; (3) the fees and payment procedures for testing; and (4) the participant's responsibilities and obligations under the program.  (Doc. 19-2 p. 1.[1])  "If the participant refuses to execute the agreement in full, the participant shall be denied participation in the program."  (*Id.* p. 2.)  Of relevance to this lawsuit, the Wyoming attorney general's administrative rules state in part,

> A participant who has been ordered or directed to submit to alcohol testing shall do so through in-person twice-daily breath tests on a device designed to detect the presence of alcohol in the test subject's breath.  A participant who has been ordered to submit to in-person twice-daily breath tests shall report to the participating entity's testing location at the times determined by the participating entity, and not less than ten (10) hours and not more than fourteen (14) hours between each test.

(Doc. 19-2 p. 2.)  The Act sets forth the procedure and consequences for a participant who fails to test as instructed or tests positive:

> (a)     Upon the failure of a person to submit to a test under the program or upon a positive test for alcohol or controlled substance in violation of the

---

[1] All pin cites to document page numbers are to those numbers assigned at the top of each page by the CM/ECF system upon filing.

program, a peace officer or a probation and parole agent shall complete a written statement establishing the person, in the judgment of the officer or agent, violated a condition of release by failing to submit to or pass a test. A peace officer shall immediately arrest the person without warrant after completing or receiving the written statement.

(b) A person taken into custody under this section shall appear before a court within a reasonable time and shall not be released unless the person has made a personal appearance before a court.

Wyo. Stat. § 7-13-1709.

### 2.    Plaintiffs

Teton County, Wyoming, is one of a handful of counties electing to implement the 24/7 Sobriety Program. The three named Plaintiffs in this case were each charged at different times with misdemeanor driving under the influence of alcohol (DUI) in Teton County. Plaintiffs Sanchez and Marx were each charged with a third-offense DUI while Plaintiff Ball was charged with a first-offense DUI. (Ball Decl. ¶ 1; Sanchez Decl. ¶ 1; Marx Decl. ¶ 1.)

As one of several conditions for their pretrial release from detention, the Teton County trial court required each Plaintiff to participate in the 24/7 Sobriety Program and submit to twice-daily alcohol breath tests. (Doc. 3-1 p. 7 (Ball); Doc. 3-2 p. 9 (Sanchez); Doc. 23-2 p. 11 (Marx).) Each Plaintiff executed a "24/7 Sobriety Program Participant Agreement and Release of Information," which set forth the requirements of their participation. (Doc. 3-1 p. 11 (Ball); Doc. 20-5 p. 1 (Sanchez); Doc. 23-2 p. 13 (Marx).) These agreements, which are required of all participants under the Wyoming attorney general's administrative rules, but which are also county-specific, set forth the following primary program requirements for these Teton County Plaintiffs:

(1)   Submit to two alcohol breath tests per day at the Teton County Jail, with the first test occurring between 6:00 and 7:00 a.m. and the second between 9:00 and 10:00 p.m.

(2)   Pay $30.00 as a program enrollment fee and pay $2.00 for each breath test ($4.00 per day) before taking the test.

(3)   Being more than 30 minutes late for a test (i.e., after 7:30 a.m. or 10:30 p.m.) is considered a failure to test.

(4)   A "positive test, failure to report, or 3rd tardy will result in [the participant's] immediate arrest."

(Doc. 3-1 p. 11; Doc. 20-5 p. 1; Doc. 23-2 p. 13.)   Plaintiffs Ball and Sanchez each participated in the program for several months and were eventually released by the trial court judge after completing a substance abuse assessment.[2]   (Ball Decl. ¶ 19; Sanchez Decl. ¶ 19.)  Plaintiff Marx was required to participate in the program as a condition of his pretrial release in January 2022 and continues to be an active participant to date.  (Marx Decl. ¶¶ 1, 3, 7.)

No named Plaintiff has tested positive for alcohol while in the program, but each has been arrested for failure to test at least once.  Plaintiff Ball was arrested twice:

- On Sunday, February 28, 2021, Plaintiff Ball overslept for the morning test, called the Teton County Sheriff's Office (TCSO) to see if he could still test, and was told he would be immediately arrested upon his arrival.  He chose to skip the test and was arrested when he arrived for the evening test that same night for his earlier failure to test.  He was released from jail the following afternoon. (Ball Decl. ¶¶ 14-15.)

- On Saturday, March 6, 2021, Plaintiff Ball again overslept and missed his morning breath test.  He chose to skip the next several tests and was arrested when he arrived for the morning test on Monday, March 8, 2021.  He was released from jail that same afternoon.  (Ball Decl. ¶¶ 16-17.)

---

[2]  The procedure and basis for a Teton County program participant's release from the program after a substance abuse assessment is unclear from the record.  From the parties' arguments at the April 8th hearing, the Court understands a participant may undergo a substance abuse assessment at their own cost and then petition the trial court to amend their pretrial release conditions based on the results of the assessment.

Plaintiff Sanchez was similarly arrested twice for program violations under the following circumstances:

- On Saturday, May 15, 2021, Plaintiff Sanchez overslept and realized he would be an hour late for the evening test. He called the TCSO to see if he could still test but was told he would be immediately arrested upon his arrival for being more than 30 minutes late. He chose to skip that evening test and then showed up around 11:30 a.m. the following morning (Sunday), where he was arrested for his failures to test. He was released from jail the following afternoon. (Sanchez Decl. ¶¶ 14-15.)

- On Tuesday, August 30, 2021, Plaintiff Sanchez was arrested for failing to test for the several days prior, but it turned out to be a court error. The trial court had released Plaintiff Sanchez from participating in the program in order to attend a funeral, but the trial court did not sign the furlough order and provide it to the TCSO until after Plaintiff Sanchez had been arrested. He was released about four hours after his arrest. (Sanchez Decl. ¶ 16; Carr Decl. ¶ 50; Doc. 19-4 p. 1.)

Finally, Plaintiff Marx was arrested once for a program violation:

- On Saturday, January 15, 2022, Plaintiff Marx was arrested for arriving more than 3 hours late for his morning test. He was not released until the following Tuesday, three days later (likely because that Monday was Martin Luther King, Jr./Wyoming Equality Day). (Marx Decl. ¶ 11; Doc. 23-2 p. 14.)

Plaintiffs challenge the program and seek a preliminary injunction on several different grounds. In brief, they assert the warrantless twice-daily breath tests violate the Fourth Amendment's protection against unreasonable searches; the warrantless arrests for program violations violate the Fourth Amendment's protection against unreasonable seizures; the program violates due process in several ways; and the program violates the Eighth Amendment's protection against excessive bail. Defendants oppose any injunctive relief.

## PRELIMINARY INJUNCTION STANDARD OF REVIEW

Preliminary injunctions are permitted by Federal Rule of Civil Procedure 65.  The decision to grant or deny a preliminary injunction is left to the trial court's discretion.  *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 899 (10th Cir. 2022).

> A preliminary injunction has the limited purpose of preserving the relative positions of the parties until a trial on the merits can be held.  It is an extraordinary remedy never awarded as of right.  A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and the right to relief is clear and unequivocal.

> Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.

*DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269–70 (10th Cir. 2018) (internal citations and quotation marks omitted).

## DISCUSSION

The Court will examine each of Plaintiff's constitutional claims in light of the preliminary-injunction elements.

### 1.   Breath Tests as Illegal Searches (Count 1)

The Fourth Amendment to the U.S. Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The Amendment guarantees the privacy, dignity, and security of persons against certain

arbitrary and invasive acts by officers of the Government or those acting at their direction." *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 613-14 (1989).  The alcohol breath tests at issue in this case are considered "searches" subject to Fourth Amendment scrutiny. *Id.* at 616-17; *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016).  A search warrant issued upon a finding of probable cause is "generally required to search a person's home or his person …." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978)); *see Kentucky v. King*, 563 U.S. 452, 459 (2011) ("Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured.").  It is uncontested here that every breath test search conducted upon the Plaintiffs was done without a warrant.

The general warrant requirement and the lack of warrant here, though, do not render the alcohol breath tests *per se* unconstitutional.  "'[U]nder our general Fourth Amendment approach' we 'examin[e] the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 848 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 118 (2001)).  "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights*, 534 U.S. at 118-19 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

"When faced with special law enforcement needs, diminished expectations of

privacy, minimal intrusions, or the like, the Court has found that certain general, or

individual, circumstances may render a warrantless search or seizure reasonable." *Illinois*

*v. McArthur*, 531 U.S. 326, 330 (2001).

> Those circumstances diminish the need for a warrant, either because "the
> public interest is such that neither a warrant nor probable cause is required,"
> *Maryland v. Buie*, 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276
> (1990), or because an individual is already on notice, for instance because of
> his employment, *see Skinner, supra*, or the conditions of his release from
> government custody, *see Samson v. California*, 547 U.S. 843, 126 S.Ct.
> 2193, 165 L.Ed.2d 250 (2006), that some reasonable police intrusion on his
> privacy is to be expected. The need for a warrant is perhaps least when the
> search involves no discretion that could properly be limited by the
> "interpo[lation of] a neutral magistrate between the citizen and the law
> enforcement officer." *Treasury Employees v. Von Raab*, 489 U.S. 656, 667,
> 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

*Maryland v. King*, 569 U.S. 435, 447 (2013).

In examining the totality of the circumstances in this case, the Court concludes the

alcohol breath tests at issue here are not unreasonable searches in violation of the Fourth

Amendment. The intrusion upon Plaintiffs' privacy from a breath test is "almost

negligible." *Birchfield*, 136 S. Ct. at 2176. It "is a far more gentle process than a

venipuncture to draw blood," *King*, 569 U.S. at 446, and it concerns no "surgical intrusions

beneath the skin," *Winston v. Lee*, 470 U.S. 753, 760 (1985). It involves only a minor entry

of the mouthpiece into the participant's mouth to create an airtight seal and an extended

exhalation from the participant. *See Birchfield*, 136 S. Ct. at 2176-77. It tests only for the

presence and amount of alcohol in the breath, and it does not divulge sensitive medical

information or leave a sample of anything behind. *Id.* at 2177. For Plaintiffs here, each

breath test was conducted at the local jail/sheriff's department, a public place, at a pre-

determined time.   There is no surprise factor, nor is a breath test itself "inherently

embarrassing" or "administered in a manner that causes embarrassment." *Id.*   "The fact

than an intrusion is negligible is of central relevance to determining reasonableness,

although it is still a search as the law defines that term." *King*, 569 U.S. at 446.

Also weighing on the reasonableness analysis is Plaintiffs' reduced expectations of

privacy resulting from their consent to the program and status as pretrial releasees.   Each

Plaintiff executed the participation agreement as a condition of their pretrial release, and

the participation agreement set forth the twice-daily breath testing requirements.   (*E.g.*,

Doc. 3-1 p. 18.)   Plaintiffs' consent to participate in the program with its known

requirement of twice-daily breath tests, diminished their legitimate expectations of privacy.

*Norris v. Premier Integrity Sols., Inc.*, 641 F.3d 695, 699 (6th Cir. 2011) ("Norris' consent

to random drug testing itself diminished his expectation of privacy.").   Further, Plaintiffs'

participation in pretrial release from confinement under certain conditions reduced their

expectations of privacy, at least as it concerns the various conditions of release. *See id.*

("Norris' participation in the highly government controlled and regulated Pretrial Release

Program reduced his expectation of privacy."); *Ippolito v. Just. Serv. Div.*, No. 13-CV-

03480-BNB, 2014 WL 459757, at *3 (D. Colo. Feb. 4, 2014) ("Mr. Ippolito's consent to,

and participation in, the pretrial release program diminished his expectation of privacy."),

*aff'd*, 562 F. App'x 690 (10th Cir. 2014); *Knights*, 534 U.S. at 119-20 (petitioner's

reasonable expectation of privacy was "significantly diminished" because the probation

order "clearly expressed the search condition and Knights was unambiguously informed of

it").   The legitimate expectation of privacy held by Plaintiffs in the amount of alcohol in

their breaths was minimal under the circumstances. *See Mackey v. Hanson*, No. 19-CV-01062-PAB, 2019 WL 5894306, at *5 (D. Colo. Nov. 12, 2019) ("Mr. Mackey did not have a legitimate expectation of privacy in the GPS data collected by the ankle monitor he agreed to wear as a condition of his pretrial release in another case").

In comparison, the degree to which the alcohol breath tests promote legitimate governmental interests outweighs their minor intrusion upon Plaintiffs' diminished privacy expectations. The Act states the 24/7 Sobriety Program's purpose "is to reduce the number of repeat crimes that are related to substance abuse by monitoring an offender's sobriety through intensive alcohol and drug testing and immediate and appropriate enforcement of violations." Wyo. Stat. § 7-13-1703(b). State Defendants provided evidence showing that alcohol and/or drug use is involved in the majority of all Wyoming arrests, with recidivism related to alcohol or drugs remaining a distinct societal concern in this rural state. In 2019, alcohol was involved in over 50% of all arrests in Wyoming and drugs in over 25% of all arrests. (Doc. 20-2 p. 7.) More specific to Plaintiffs here, driving under the influence (DUI) accounted for more than 33% of all Wyoming arrests, "is the cause of more deaths and serious injuries than any other crime," and "a third of all traffic fatalities are the result of impaired driving." (*Id.* pp. 7-8.) "In addition, 34% percent of persons arrested for DUI in 2020 had been arrested for DUI previously." (*Id.* p. 8.) The Wyoming Legislature's interest in reducing alcohol-related and drug-related recidivism by those arrested for such offenses is a legitimate governmental interest. "The government's interest in preventing crime by arrestees is both legitimate and compelling." *United States v. Salerno*, 481 U.S. 739, 749 (1987) (citing *De Veau v. Braisted,* 363 U.S. 144, 155 (1960)). Wyoming has an

important, public-safety interest in ensuring the sobriety of those arrested on alcohol or drug-related offenses while awaiting trial.  *See State v. Spady*, 354 P.3d 590, 598 (Mont 2015) ("The overarching goal of the 24/7 Sobriety Program is safeguarding the public by reducing the number of intoxicated drivers in Montana.").  Moreover, twice-daily breath tests have a strong likelihood of accomplishing the goal of deterring program participants from endangering the community by drunk driving while on pretrial release.

The totality of the circumstances presented in this lawsuit demonstrate the privacy interests implicated by the twice-daily alcohol breath tests are minimal, and Wyoming has an important governmental interest of reducing repeat crime related to substance use by a defendant who is on pretrial release.  Requiring participation in the 24/7 Sobriety Program with twice-daily breath tests as a condition of pretrial release reasonably advances the State's important governmental interest of protecting the public.  The 24/7 Sobriety Program's twice-daily alcohol breath test requirement did not infringe on Plaintiffs' Fourth Amendment protection against unreasonable searches.  Plaintiffs have not carried their preliminary-injunction burden of proving a substantial likelihood of success on the merits as to Count 1 of their amended complaint.[3]

**2.    Warrantless Arrests for Program Violations as Illegal Seizures (Count 2)**

The Fourth Amendment also protects against unreasonable seizures.  As noted earlier, Wyoming's 24/7 Sobriety Program Act requires the immediate, warrantless arrest

---

[3]  Additionally, to the extent Plaintiffs' facial and as-applied challenges to Wyo. Stat. §§ 7-13-1703 and 7-13-1708 and Administrative Rule 015.0017 Chapter 2 are based on their unconstitutional-search arguments (Doc. 3 pp. 17-18), Plaintiffs have not shown a substantial likelihood of success on those challenges because the breath test are not unconstitutional searches.

of a program participant upon a failure to submit to a test or upon a positive test.  Wyo.

Stat. § 7-13-1709(a).  A "warrantless arrest of a person is a species of seizure required by

the Amendment to be reasonable."  *Payton v. New York*, 445 U.S. 573, 585 (1980).  "A

warrantless arrest violates the Fourth Amendment unless probable cause exists to believe

a crime has been or is being committed." *Corona v. Aguilar*, 959 F.3d 1278, 1282 (10th

Cir. 2020).

> To determine whether an officer had probable cause for an arrest, "we
> examine the events leading up to the arrest, and then decide 'whether these
> historical facts, viewed from the standpoint of an objectively reasonable
> police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S.
> 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting *Ornelas v. United
> States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).  Because
> probable cause "deals with probabilities and depends on the totality of the
> circumstances," 540 U.S., at 371, 124 S.Ct. 795, it is "a fluid concept" that
> is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois
> v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  It
> "requires only a probability or substantial chance of criminal activity, not an
> actual showing of such activity." *Id.,* at 243–244, n. 13, 103 S.Ct. 2317
> (1983).  Probable cause "is not a high bar." *Kaley v. United States,* 571 U.S.
> ——, ——, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014).

*D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018).

Here, Defendants accurately argue the warrantless arrests are supported by probable

cause to believe Plaintiffs had committed the crime of contempt of court by failing to test

as required by the program.  There is no dispute the trial court ordered each Plaintiff to

participate in the program and submit to twice-daily breath testing as a condition of their

pretrial release from detention.  Pretrial release from state custody in Wyoming is governed

by Wyoming Rules of Criminal Procedure 46 through 46.4, and Rule 46.1(c) expressly

authorizes a state court to impose release conditions that are designed to reasonably assure

the defendant's future court appearances and the safety of the community. In turn, Rule 46.4 governs sanctioning a defendant for violating a release condition and provides in part, "Whoever having been released under Rules 46 through 46.4 knowingly … fails to comply with any condition set by the court pursuant to Rule 46.1(c), may be punished for contempt." Wyo. R. Crim. P. 46.4(a). Additionally, a separate prosecution for contempt may lie for the violation of a release condition. *Id.* 46.4(c).

"Criminal contempt is a crime in every fundamental respect, and may be used to punish, *inter alia*, 'disobedience of any lawful judgment, order, or process of the court.'" *Greer v. Greer*, 391 P.3d 1127, 1134 (Wyo. 2017) (quoting *Weidt v. State*, 312 P.3d 1035, 1040 (Wyo. 2013)); *see* Wyo. R. Crim. P. 42(a)(2)(C) (defining indirect criminal contempt to include "[d]isobedience of any lawful judgment, order, or process of the court"). Upon a Plaintiff's failure to submit to a breath test at the Teton County Jail during the predetermined hours, a law enforcement officer had probable cause to believe the absent Plaintiff had committed the crime of indirect criminal contempt by disobeying the trial court's conditions of pretrial release. That is, the fact that a Plaintiff failed to present themself at the Teton County Jail to undergo an alcohol breath test during the times required by the program fairly lead an objectively reasonable officer to believe there was a substantial chance the Plaintiff had committed indirect criminal contempt.

In part, Plaintiffs attempt to paint their failure to appear for testing at the designated times as "tardiness" rather than as a failure to submit to testing. (*E.g.*, Doc. 3 p. 21.) This argument is unavailing. Each Plaintiff was informed of, and initialed and agreed to, the following program provision: "I also understand that arriving after 30 minutes past either

deadline will be considered a missed test." (Doc. 3-1 p. 11 (Ball); Doc. 20-5 p. 1 (Sanchez);

Doc. 24-2 p. 13 (Marx).)  Plaintiffs were not arrested for "being late" to a test; each was

arrested for not submitting to a breath test in conformity with the 24/7 Sobriety Program,

which was an express condition of their pretrial release.  (Doc. 3-1 p. 7 (Ball); Doc. 3-2 p.

9 (Sanchez); Doc. 24-2 p. 11 (Marx)); *see* Wyo. Stat. § 7-13-1709(a) (requiring a peace

officer to arrest a program participant upon their failure "to submit to a test under the

program" after the officer prepares or receives a written statement establishing the

participant, in the officer's judgment, "violated a condition of release by failing to submit

to or pass a test")).

Plaintiffs' warrantless arrests here for failing to submit to twice-daily alcohol breath

tests as ordered as a condition of pretrial release satisfied the Fourth Amendment's

requirement of reasonableness because they were supported by probable cause to believe

the criminal offense of contempt of court had been committed.  Plaintiffs have not carried

their preliminary-injunction burden of proving a substantial likelihood of success on the

merits as to Count 2 of their amended complaint.[4]

**3.**    **Due Process Challenges (Count 3)**

Plaintiffs allege Wyoming's 24/7 Sobriety Program Act, and especially Wyo. Stat.

§ 7-13-1709, violates due process in several ways.  (Am. Compl. ¶¶ 214-226; Doc. 3 pp.

20-25.)  First, Plaintiffs contend they were "unjustly deprived of 'life, liberty, or property'

---

[4]  Plaintiffs' argument that their warrantless arrests offended the Fourth Amendment because they did not
comply with Wyo. R. Crim. P. 42's requirements for contempt proceedings (Doc. 3 p. 20) is likewise
unavailing.  "[S]tate law does not determine the reasonableness of a seizure under the Fourth Amendment."
*United States v. Turner*, 553 F.3d 1337, 1346 (10th Cir. 2009) (citing *Virginia v. Moore*, 128 S. Ct. 1598,
1605 (2008)).

when Deputies arrested and jailed them, and because the arrests themselves were not implemented in a fair or reasonable manner." (Doc. 3 pp. 20-21.)

> [U]nder *Albright [v. Oliver*, 510 U.S. 266 (1994),] and our subsequent cases, the Fourth Amendment adequately protected Becker's constitutional liberty interests, and she therefore has no procedural due process claim based on pre-trial deprivations of physical liberty. *See Albright,* 510 U.S. 266, 114 S.Ct. 807; *Pierce,* 359 F.3d at 1285–86; *Taylor,* 82 F.3d at 1560.

*Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007).  Because the Court already determined there was no Fourth Amendment violation here, at least for preliminary-injunction purposes, this assertion of procedural due process is unlikely to succeed on its merits. Plaintiffs received all the due process to which they were entitled under the Fourth Amendment.

Next, Plaintiffs allege their arrests "for merely being late to testing" violate substantive due process because it "shocks the conscience." (Doc. 3 p. 21.)

> "The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie,* 438 F.3d 1036, 1040 (10th Cir. 2006) (quotations omitted).  "Conduct that shocks the judicial conscience ... is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Seegmiller v. LaVerkin City,* 528 F.3d 762, 767 (10th Cir. 2008) (quotations omitted).  To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or "employ[ed] it as an instrument of oppression." *Williams v. Berney,* 519 F.3d 1216, 1220 (10th Cir. 2008).

*Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013).  As discussed above, no Plaintiff in this case was arrested for being late to testing; all arrests of Plaintiffs in connection with the 24/7 Sobriety Program were for their failure to submit to a breath test as required by the program, which was an express condition of their pretrial release.

Plaintiffs' arrests based on their failures to test do not shock the judicial conscience, particularly when they were informed in writing that being more than 30 minutes late to a testing session constituted a missed test.  The Court can find no arbitrary abuse of authority or oppression here.  This claim of substantive due process is unlikely to succeed on its merits.

Plaintiffs also assert the program violates due process by punishing them prior to any adjudication of guilt.  (Doc. 3 p. 21.)

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "While the State may not subject a pretrial detainee to punishment, it may impose conditions on a pretrial detainee so long as they are part of a legitimate governmental purpose and not intended as punishment." *State v. Spady*, 354 P.3d 590, 599 (Mont. 2015).

> Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on "'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Ibid.,* quoting *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963).

*United States v. Salerno*, 481 U.S. 739, 747 (1987).

As the Court already discussed, the express purpose of Wyoming's 24/7 Sobriety Program Act is to protect the community and reduce repeat crime related to alcohol and drugs. "The government's interest in preventing crime by arrestees is both legitimate and

compelling," *id.* at 749, and this program is a reasonable method of advancing that governmental interest.  Plaintiffs have not demonstrated the manifest or latent purpose of the Act is to punish pretrial releasees.  The program's twice-daily breath tests are undoubtedly inconvenient, but the Court cannot say it is excessive in relation to the problem and its stated goal of reducing repeat alcohol-related crime.  Further, it is significant that the program is not a mandatory condition of pretrial release but is instead left to the trial court's discretion to decide on a case-by-case basis.  *See* Wyo. Stat. § 7-13-1708(a) ("a court may order participation in the program as a condition of pretrial release"); *cf. United States v. Blaser*, 390 F. Supp. 3d 1306, 1317-18 (D. Kan. 2019) (determining mandatory imposition of electronic monitoring as pretrial release condition for defendants charged with certain crimes involving minors violated due process because "the condition would still be imposed without a defendant having the opportunity to contest its imposition or the court having an opportunity to decide if it is truly the least restrictive means necessary").  This claim is unlikely to succeed on its merits because Plaintiffs have not shown the program or their required participation in the program as a release condition constitute impermissible punishment before any adjudication.

Plaintiffs further claim the Act is void for vagueness.  (Doc. 3 pp. 22-23.)  "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1179 (10th Cir. 2009) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).  The statutes provided sufficient

definiteness by requiring participating county sheriffs to establish at least one testing location and two daily testing times approximately 12 hours apart.  Wyo. Stat. § 7-13-1704(b).  It also delegated authority to the state attorney general to adopt rules implementing the program, *id.* § 7-13-1705, which was done.  Significantly, the state attorney general's administrative rules require a defendant ordered to participate in the program to sign a participation agreement that sets forth the testing requirements.  (Doc. 19-2 pp. 1-2.)  The Act and the manner in which the program is implemented did not allow for or encourage application or enforcement "on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."  *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

Nor are the program's demands impermissibly vague as applied to Plaintiffs.  Each Plaintiff was ordered by the trial court to participate in the program and submit to twice-daily alcohol breath tests as part of the program, and each Plaintiff signed a participation agreement which detailed the testing requirements, testing location and times, and the consequence of a positive test or missed test ("immediate arrest").  (*E.g.*, Doc. 3-1 p. 11.)  No Plaintiff here has alleged they did not understand what was required of them, and indeed the numerous tests successfully taken (and passed) by each Plaintiff demonstrate they sufficiently understood the program's requirements.  (*E.g.*, Sanchez Decl. ¶ 7 (242 breath tests while in the program).)  All Plaintiffs contend they missed certain tests because they overslept, not because they didn't understand the requirement to test or where to go for testing.  Plaintiffs' contention that ordinary people could not understand what the program required is not well taken.

Likewise, the program provided law enforcement with sufficient guidance for enforcement.  It required participating county sheriffs to establish a testing location and two daily testing times approximately 12 hours apart, provided for several testing methods including alcohol breath tests, and set forth the procedure to arrest a participant who failed to test or tested positive (which, as addressed earlier, has not been shown to be unconstitutional).  Wyo. Stat. §§ 7-13-1703, -1704, -1709.  Plaintiffs take offense that Wyo. Stat. § 7-13-1709(a) requires a peace officer to prepare a written statement showing the person, "in the judgment of the officer," violated a release condition "by failing to submit to or pass a test" (Doc. 3 p. 23), but warrantless arrests based on probable cause are constitutional and are nearly always based entirely on an officer's judgment.  This is nothing new and is allowed by law. *Quinn v. Young*, 780 F.3d 998, 1006-07 (10th Cir. 2015).  And under the Act, an officer's basis for arrest is limited to a positive test or failure to test.  In sum, the Act and the implementation of the program in this case are not unconstitutionally vague.

Plaintiffs have thrown much due-process spaghetti at the wall in this preliminary injunction proceeding, but none of it has stuck.  Plaintiffs have not established the Act or program violate their substantive or procedural due process rights, and consequently they have not carried their preliminary-injunction burden of proving a substantial likelihood of success on the merits as to Count 3 of their amended complaint.

**4.    24/7 Sobriety Program as Excessive Bail**

Finally, Plaintiffs assert Wyoming's 24/7 Sobriety Program's "burdensome and excessive combination of testing appearances, conditions, and fees over a prolonged period

of weeks and months violates" the Eighth Amendment's prohibition against excessive bail. (Am. Compl. ¶ 228.) "Because the practical effect of excessive bail is the denial of bail, logic compels the conclusion that the harm the Eighth Amendment aims to prevent is the unnecessary deprivation of pretrial liberty." *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983). "The Eighth Amendment's Excessive Bail Clause, which applies to pretrial detainees, 'prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail.'" *Halik v. Darbyshire*, No. 20-CV-01643-PAB-KMT, 2021 WL 4556188, at *13 (D. Colo. Aug. 23, 2021), *report and recommendation adopted*, No. 20-CV-01643-PAB-KMT, 2021 WL 4305011 (D. Colo. Sept. 22, 2021) (quoting *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)). Courts "look to the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests." *Galen*, 477 F.3d at 660.

Here, Plaintiffs were never denied pretrial release, and the release conditions requiring they participate in the program and submit to twice-daily breath tests were not excessive. Plaintiffs were required to pay $30 to enroll in the program and $2 per breath test, and no Plaintiff contends they were denied release because they could not financially afford these expenses. *See Broussard v. Parish of Orleans*, 318 F.3d 644, 651-52 (5th Cir. 2003) (bail-fee statutes that imposed specified charges or administrative fees when an arrested individual posted bail did not constitute excessive bail where charges were nominal, nondiscretionary fees and no evidence arrestee who was otherwise able to secure bail was kept from doing so because of de minimis administrative fee). In this case "The

fee is similar to other fees imposed at the pretrial phase, whereby the defendant forfeits some money for the privilege of release.  Additionally, the fee is associated entirely with the cost of the testing program, not with traditional notions of punishment such as restitution or retribution." *State v. Spady*, 354 P.3d 590, 599 (Mont. 2015); *see also* Wyo. Stat. § 7-13-1705(a)(ii) ("fees shall be set as low as possible, but shall be set so that the total of fees and other funds credited to the program account defray the entire expense of the program").

Moreover, the strong state interests of reducing alcohol-related crime and protecting the community are reasonably advanced through these release conditions, and the release conditions are not excessive in comparison.  Submitting to testing morning and night at the local jail is undoubtedly inconvenient, but it also helps to ensure program participants comply with the "no alcohol consumption" release condition and reduces the potential for a participant to repeat any alcohol-related criminal activity, both of which help assure the safety of the community.  The release conditions challenged here are reasonably calculated to achieve the valid state's interests and are not excessive in light of those interests.

Plaintiffs have not established that the pretrial release conditions of participating in the 24/7 Sobriety Program and submitting to twice-daily breath testing as part of the program, even including the associated financial fees, are unconstitutionally excessive in violation of the Eighth Amendment.  Plaintiffs have not carried their preliminary-injunction burden of proving a substantial likelihood of success on the merits as to Count 4 of their amended complaint.

## CONCLUSION AND ORDER

Plaintiffs have not demonstrated a substantial likelihood of success on their claims that Wyoming's 24/7 Sobriety Program Act and the implementation of the program in their state criminal cases violated their constitutional protections.  Thus, they have not shown a preliminary injunction is warranted during the pendency of this action.  The Court notes the findings and conclusions set forth herein "do not constitute a determination on the merits, but are preliminary findings in the context of the limited evidence presented at the hearing for a preliminary injunction." *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 13, 215 P.3d 1054, 1060 (Wyo. 2009).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 2) is **DENIED**.

**ORDERED:** April __/5th__, 2022.

Scott W. Skavdahl
United States District Judge